IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-38306-SBB |
| JOHN CHARLES THOMAS ) | |
| MICHELLE LYNN THOMAS ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| CHRISTOPHER LYKINS ) | Adversary No. 11-01056-MER |
| LORI J. WAKNIN ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN CHARLES THOMAS ) | |
| ) | Dated/Signed |
| Defendant. ) | March 26, 2012 |

## ORDER

THIS MATTER comes before the Court on the *Plaintiff's Amended Joint Motion for Summary Judgment Pursuant to FED. R. BANKR. P. 7056(1)* (Docket #41) (the "Motion").

### JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns determinations as to the dischargeability of particular debts.

### PROCEDURAL BACKGROUND

**A.   The Thomas Case.**

On November 8, 2010, John Charles Thomas ("Thomas") and Michelle Lynn Thomas filed a voluntary petition for Chapter 7 bankruptcy relief. On January 25, 2011, Christopher Lykins ("Lykins") and Lori J. Waknin ("Waknin") (collectively, the "Plaintiffs") filed their Complaint against Thomas (the "Thomas Adversary"). The allegations and claims for relief in the Complaint arise from the consignment of Waknin's vehicle to Spotlight Motors, LLC ("Spotlight") of which Thomas was a part owner, and the subsequent sale of the same vehicle to Lykins. As is more fully set forth below, this case and adversary proceeding are related to that of Christopher Blair Teta ("Teta"), the co-owner of Spotlight.

In the Thomas Adversary, Plaintiffs assert the following claims for relief: 1) Fraudulent Transfer under COLO. REV. STAT. § 38-8-101, *et seq.*; 2) Alter Ego Doctrine under COLO. REV. STAT. § 7-80-107; 3) Member Liability under COLO. REV. STAT. § 7-80-606; 4) Common Law Trustee Doctrine; 5) Violation of Colorado Consumer Protection Act under COLO. REV. STAT. § 6-1-105; 6) Conversion/Civil Theft; 7) Civil Conspiracy as to Civil Theft; 8) Fraud and Fraud by Check; 9) Unjust Enrichment; 10) Nondischargeability under § 523(a)(2)(A); 11) Nondischargeability under § 523(a)(4); and 12) Nondischargeability under § 523(a)(6).[1] Based on these claims, Plaintiffs requested a judgment for the following:

1) money damages in an amount sufficient to compensate Plaintiffs fully for their injuries, damages and losses;
2) treble damages pursuant to COLO. REV. STAT. §§ 18-4-405 and 6-1-113;
3) reasonable attorney fees and costs pursuant to COLO. REV. STAT. §§ 18-4-405 and 6-1-113;
4) prejudgment and post-judgment interest as allowed by law;
5) an order finding Defendant John Charles Thomas' debts to the Plaintiffs are nondischargeable in their entirety; and
6) such other relief this Court deems just and appropriate.[2]

On February 23, 2011, Thomas filed an *Answer to Adversary Complaint*. Thomas admitted he and Teta were members of Spotlight, but generally denied all substantive allegations and set forth the following affirmative defenses: 1) the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Ninths Claims for Relief fail to state a claim upon which this Court may grant relief; 2) this Court lacks jurisdiction over the subject matter on various claims asserted by Plaintiffs; 3) Plaintiffs cannot prove public impact necessary to prevail on their Fifth Claim for Relief; 4) Plaintiffs First, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh and Twelfth Claims for Relief are barred by the express provisions of §§ 523(a)(2)(A), (4), and (6).

**B.     The Teta Case.**

On June 30, 2010, Teta and his spouse, Laura Anne Teta, filed a voluntary petition for Chapter 7 bankruptcy relief, Case No. 10-26493-MER. On September 29, 2010, Lykins and Waknin commenced Adversary Proceeding No. 10-1706-MER against Teta by filing a Complaint containing virtually the same claims they now assert against Thomas (the "Teta Adversary"). Teta failed to file an answer or other responsive pleading. Upon Lykins and Waknin's request for a default judgment, this Court conducted an evidentiary hearing on March 17, 2011. At the evidentiary hearing, the Court admitted exhibits into evidence and heard testimony from Waknin, Lykins, Chuck Haberstadt, an investigator with the Colorado Motor

---

[1] These are the same twelve claims for relief the Plaintiffs asserted against Teta in the Teta Adversary.

[2] Complaint, p. 15. This is the same prayer for relief as requested against Teta in the Teta Adversary.

Vehicle Dealer Board and Auto Industry Division ("Haberstadt"), Thomas, and Daniel T. Ronneberg, Waknin's attorney ("Ronneberg").[3]

On June 16, 2011, in the Teta Adversary, this Court entered an Order granting, in part, Lykins and Waknin's *Joint Motion for Default Judgment Pursuant to Fed. R. Bankr. P. 7055-1-(b)* (the "June 16, 2011 Order").[4] Specifically, this Court ruled as follows:

> IT IS ORDERED the *Joint Motion for Default Judgment Pursuant to FED. R. BANKR. P. 7055-1-(b)* filed on December 28, 2010 (Docket #9) is GRANTED, in part, as to Plaintiff Waknin. Judgment shall enter in favor of Waknin and against Teta in the amount of $19,436.86 in damages, trebled to $58,310.58, plus attorney fees and costs of $19,760, for a total of $78,070.58, plus post-judgment interest at the rate set forth in 28 U.S.C. § 1961. Waknin may update her attorney fees and costs through the date of this Order by filing an attorney fee affidavit and bill of costs within fourteen (14) days of this Order. Such debt is nondischargeable in Teta's bankruptcy case pursuant to §§ 523(a)(2)(A), (a)(4) and (a)(6).

> IT IS FURTHER ORDERED the *Joint Motion for Default Judgment Pursuant to FED. R. BANKR. P. 7055-1-(b)* filed on December 28, 2010 (Docket #9) is GRANTED, in part, as to Plaintiff Lykins. Judgment shall enter in favor of Lykins and against Teta in the amount of $22,431.56 in damages, trebled to $67,294.68, plus attorney fees and costs of $14,943.14, for a total of $82,237.82, plus post-judgment interest at the rate set forth in 28 U.S.C. § 1961. Lykins may update his attorney fees and costs through the date of this Order by filing an attorney fee affidavit and bill of costs within fourteen (14) days of this Order. Such debt is nondischargeable in Teta's bankruptcy case pursuant to §§ 523(a)(2)(A), (a)(4) and (a)(6).

> IT IS FURTHER ORDERED both judgments shall be subject to a constructive trust as set forth above.[5]

---

[3] *See Minutes of Proceeding* (Docket #22). Teta did not enter an appearance or testify at the evidentiary hearing on March 17, 2011. Teta did file a letter with the Court on March 18, 2011 (Docket #21), asserting he was present in Court on March 17, 2011, and requesting the Court consider the statements in his letter regarding his pre-petition settlement negotiations with the Plaintiffs, efforts undertaken to resolve title issues with the Department of Revenue and his intent regarding the transactions with Lykins and Waknin. Because Teta failed to respond to the Complaint, First Motion for Default and Second Motion for Default, and failed to enter an appearance in open Court, and was not subject to cross-examination, the Court did not consider the statements in Teta's letter.

[4] *Lykins and Waknin v. Teta* (*In re Teta*), Slip Copy, 2011 WL 2435948 (Bank. D. Colo. 2011).

[5] *Lykins and Waknin v. Teta*, 10-01706-MER (Order dated June 16, 2012, Docket #24, Judgment dated July 6, 2011, Docket #28). 2011 WL 2435948 at *17.

**C.     Motion for Summary Judgment.**

In the Thomas Adversary, on October 3, 2011, Lykins and Waknin filed the instant Motion[6] which requested the Court grant summary judgment in the Plaintiffs' favor on all claims in the Complaint, including those under §§ 523(a)(2), (4) and (6).  Specifically, Waknin requests judgment in favor of her in the amount of $19,436.86, trebled to $58,310.58 plus interest and attorney fees to be determined at a date certain.  Lykins requests judgment in favor of him in the amount of $22,431.56, trebled to $67,294.68 plus interest and attorney fees to be determined at a date certain.  In the alternative, Plaintiffs request the Court make findings of fact on those material issues that exist without substantial controversy, pursuant to FED. R. CIV. P. 56(g).[7]

The amounts requested by the Plaintiffs are the same amounts the Court awarded these parties in the June 16, 2011 Order in the Teta Adversary.  In their Motion, the Plaintiffs argue the threshold question for the Court is to determine whether the corporate veil of Spotlight Motors, LLC should be pierced in the Thomas Adversary.  They contend the question was answered and decided in the Teta Adversary, where this Court considered identical facts and issues as are before the Court in this case.  The Plaintiffs maintain the Court's findings of fact and conclusions of law in the Teta Adversary are applicable to the Thomas Adversary because Teta and Thomas are "identically situated since both were equal members and equal participants in Spotlight's business activities . . . with complete and full management and fiduciary responsibilities and oversight."[8]

On October 31, 2011, Thomas filed *Defendant's Response to Plaintiffs' Joint Motion for Summary Judgment* (the "Response").[9]  In his Response, Thomas argues the Plaintiffs attempt to set forth the elements of their alter ego, member liability, and §§ 523(a)(2)(A), (4) and (6) claims, but fail to set forth the elements of the other claims including fraudulent transfer, common law trustee doctrine, violation of Colorado Consumer Protection Act, conversion/civil theft, civil conspiracy as to civil theft, fraud, fraud by check and unjust enrichment.  As to these other claims, Thomas requests the Court deny summary judgment based on the Plaintiffs' failure to comply with L.B.R. 7056-1(a)(2).  Further, as to all claims, Thomas request the Court deny summary judgment because disputed issues of material fact exist.

Specifically, with respect to the §§ 523(a)(2)(A), (4) and (6) claims, Thomas argues there is a lack of evidence showing he [Thomas] made false representations or obtained money by fraud.  He also claims he did not commit embezzlement or larceny and did not act willfully or in

---

[6] The Motion is accompanied by an *Amended Memorandum in Support of Plaintiff's Joint Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056(1)*, as well as, twenty-two exhibits, all totaling 276 pages.

[7] FED.R.CIV.P. 56 is made applicable to this proceeding by FED.R. BANKR.P. 7056.

[8] Motion, pp. 9 and 11.

[9] Thomas also filed *Defendant's Memorandum in Opposition of Plaintiff's Memorandum in Support of Motion for Summary Judgment* ("Defendant's Memorandum").

a malicious matter regarding Plaintiffs' property. Finally, Thomas argues the facts which supported this Court's decision to pierce the corporate veil with respect to Teta (who Thomas alleges was the dominant member of Spotlight) are not present as to him.

Thomas sets forth the following as material and disputed facts:

1. Any representations or statements made to Plaintiff Waknin regarding the consignment agreement or lien payoff were made by Teta, not Thomas.

2. At no time during his March 17, 2011 testimony did Plaintiff Lykins testify that Thomas made any representations to him regarding the 2002 Mercedes CLK 430.

3. The money received from Plaintiff Lykins for the purchase of the 2002 Mercedes CLK 430 went into the Spotlight, LLC checking account.

4. Contrary to Plaintiffs' assertions, this Court has never found that Thomas made any false representations to Plaintiffs or embezzled funds from Plaintiffs.[10]

On November 10, 2011, Plaintiffs filed a *Reply to Defendant's Response to Plaintiff's Joint Motion for Summary Judgment* wherein they focus on the following claims: violation of the Colorado Consumer Protection Act, fraud, fraudulent transfer, and civil theft (the "Reply").

### DISCUSSION

**A. Summary Judgment Pursuant to FED. R. CIV. P. 56(a).**

In reviewing the Motion, Response and Reply, the Court is mindful of the guidance stated by the Tenth Circuit Court of Appeals that summary judgment is a drastic remedy and "should be applied with caution to the end that litigants will have a trial on bona fide factual disputes. No margin exists for the disposition of factual issues. If there is any issue as to a material fact dispositive of right or duty, the case is not ripe for summary judgment."[11]

As is more fully discussed below, the parties appear to agree on most of the general facts (*i.e.,* date of the consignment and sale, amount, documents evidencing the sale, and parties involved). However, several other mixed factual and legal issues exist. These include whether

---

[10] Defendant's Memorandum, pp. 5-6.

[11] *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir. 1973) (citations omitted).

the corporate veil should be pierced as to Thomas,[12] whether Thomas made false representations which were justifiably relied on by Plaintiffs, and whether Thomas acted with an intent to cause the Plaintiffs injury. These mixed questions of fact and law are relevant in the Court's ruling on all three claims for relief under § 523(a).

Most importantly, the intent of Thomas is a key issue to determination of the claims in this case. Whether Thomas intended to deceive the Plaintiffs or whether Thomas acted wilfully and maliciously cannot be answered on summary judgment based on the current pleadings, transcripts and discovery before the Court. An assessment of the credibility of the witnesses and additional evidence to evaluate the facts is necessary for the Court to determine the claims raised in the Plaintiffs' Complaint.[13]

## B.     Doctrines of Res Judicata, Collateral Estoppel and Law of the Case.

Although nowhere in the Motion do the Plaintiffs mention res judicata or collateral estoppel, certain arguments appear to raise one or both of these doctrines. Furthermore, certain paragraphs in the Motion are preceded by the heading "Law of the Case."[14] Thus, the Court will briefly address these principles and why they are not applicable to this adversary proceeding.

The Tenth Circuit Court of Appeals has described the doctrine of collateral estoppel (or "issue preclusion") as follows:

> Under Colorado law, "[t]he doctrine of collateral estoppel precludes relitigation of an issue that was already litigated and decided in a previous proceeding." *Grynberg v. Ark. Okla. Gas Corp.*, 116 P.3d 1260, 1263 (Colo. App. 2005). Collateral estoppel, also known as issue preclusion, "is intended to relieve parties of the cost

---

[12] This includes determining whether Thomas and Spotlight, LLC (as opposed to Teta and Spotlight) were *alter egos* of one another. As it did in the Teta Adversary, this Court must also consider equitable factors:

> Secondarily, a court should determine whether "justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was 'used to perpetrate a fraud or defeat a rightful claim.'" *Id*. Finally, the court should determine if an equitable result will be achieved by disregarding the corporate veil. *Id*.

*In re First Assured Warranty Corp.*, 383 B.R. 502, 527 (Bankr. D. Colo. 2008).

[13] See *In re Sutherland-Minor*, 345 B.R. 348, 356 (Bankr. D. Colo. 2006) (citation omitted) ("[S]ummary judgment is difficult to obtain when the issue is the intent of one of the parties."), *In re Lopez*, 381 B.R. 417, 4 (10th Cir. BAP 2008) (unpublished opinion) (citing *Crossingham Trust v. Baines* (*In re Baines*), 337 B.R. 392, 400 (Bankr. D. N.M. 2006) ("[T]he issue of fraudulent intent is a material issue not easily subject to adjudication by summary judgment."), and *Lazaron v. Lucas* (*In re Lucas*), 386 B.R. 332, 338 (Bankr. D. N.M. 2008) ("Rarely is it appropriate to grant summary judgment on a claim for non-dischargeability based on 11 U.S.C. § 523(a)(2)(A) because intent to defraud often depends upon the credibility of witnesses.").

[14] See Amended Memorandum in Support of Plaintiff's Joint Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056(1), pp. 7 and 11.

and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo.1999) (citations and internal quotation marks omitted). It bars relitigation of an issue if:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Id.* at 84-85. The party seeking collateral estoppel has the burden of establishing each of these elements. *Id.* at 85.[15]

The difference between collateral estoppel and res judicata has also been described by the U.S. District for the District of Colorado as follows:

Though sometimes used to refer to the narrower concept of claim preclusion, res judicata traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called collateral estoppel. *See e.g. Carter v. City of Emporia*, 815 F.2d 617, 619 n. 2 (10th Cir.1987). The Tenth Circuit has stated:

> The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related. Res judicata generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action. A claim is barred by res judicata when the prior action involved identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential.

*Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (internal citations and quotations omitted). "Both doctrines require that the party or parties against whom the earlier decision is asserted had a full and fair opportunity to litigate the

---

[15] *Nichols v. Board of County Com'rs of County of La Plata, Colo.*, 506 F.3d 962 (10th Cir. 2007). See also *In re Sutherland-Minor*, 345 B.R. 348, 353 (Bankr. D. Colo. 2006) (same).

claim or issue." *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (*citing Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n. 22 (1982)).

Federal courts are required by the full faith and credit provision of 28 U.S.C. § 1738 to give a state court judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered. 28 U.S.C. § 1738; *see Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 519 (1986). This Act requires federal courts to apply the res judicata rules of a particular state to judgments issued by courts of that state. *Parsons Steel*, 474 U.S. at 523. . . .

Under Colorado state law, res judicata "bars relitigation not only of all issues actually decided, but of all issues that might have been decided." *Pomeroy v. Waitkus*, 517 P.2d 396, 399 (1974) (emphasis added); *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo. 1989). In Colorado, res judicata operates as a bar to a second action where there is (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions. *Cruz v. Benine*, 984 P.2d 1173 (Colo. 1999).[16]

In this adversary proceeding, there is no prior state court judgment to rely on, but there is this Court's ruling in the Teta Adversary. However, Thomas was not a party to the that proceeding. While he did testify as a witness in the Teta Adversary, Thomas was not given a full and fair opportunity to litigate claims against him in that adversary proceeding.

As for "law of the case," the United States Supreme Court has stated, "law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*."[17] Teta and Thomas have separate bankruptcy cases and separate

---

[16] *Hamilton v. Emerald Isle Lending Co.*, Slip Copy, 2011 WL 1990568, *7-8 (D. Colo. April 6, 2011) (recommendation adopted in *Hamilton v. Emerald Isle Lending Co.*, Slip Copy, 2011 WL 1987295 (D. Colo. May 23, 2011).

[17] *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382 (1983) (emphasis added). *See also Straight v. Wyoming Department of Transportation* (*In re Straight*), 248 B.R. 403 (10th Cir. BAP 2000) where the Bankruptcy Appellate Panel for the Tenth Circuit stated:

In the Tenth Circuit, the law of the case doctrine is defined as follows:

Issues decided on appeal become the law of the case and are to be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice."

*Woods v. Kenan* (*In re Woods*), 215 B.R. 623, 625 (10th Cir. BAP 1998) (quoting *White v. Murtha*,

adversary proceedings. Thus, law of the case does not apply. Accordingly, the Court cannot grant the motion for summary judgment based on a theory of collateral estoppel, res judicata or law of the case.

C.     **Material Facts Not Genuinely in Dispute Pursuant to FED. R. CIV. P. 56(g).**

Pursuant to FED. R. CIV. P. 56(g), "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Based on a review of the Complaint and Answer, as well as the Motion and Response, the following facts are undisputed and established in the case:

1. Plaintiff Waknin resides at 1353 S. Clarkson Street, Denver, Colorado 80210. Complaint ¶ 5, Answer ¶ 5.

2. Plaintiff Lykins resides at 3932 S. Uinta Street, Denver, Colorado 80237. Complaint ¶ 6, Answer ¶ 6.

3. John Charles Thomas, a/k/a Chuck Thomas ("Thomas") is an individual residing in Colorado and was a member of Spotlight Motors LLC ("Spotlight"). Complaint ¶ 7, 11, Answer ¶ 7, 11.

4. Christopher Blair Teta ("Teta") is an individual residing in Colorado and was a member of Spotlight. Complaint ¶ 12, Answer ¶ 12.

---

377 F.2d 428, 431–32 (5th Cir.), reh'g denied, 381 F.2d 34 (5th Cir. 1967)), aff'd, 173 F.3d 770 (10th Cir.), cert. denied, 528 U.S. 878, 120 S.Ct. 187, 145 L.Ed.2d 157 (1999). The doctrine does not apply "'unless an appellate decision has issued on the merits of the claim sought to be precluded.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1448 (10th Cir. 1996) (quoting *Wilmer v. Board of County Comm'rs*, 69 F.3d 406, 409 (10th Cir. 1995)); accord *Octagon Resources, Inc. v. Bonnett Resources Corp.* ( *In re Meridian Reserve, Inc*.), 87 F.3d 406, 410 (10th Cir. 1996). An earlier decision, therefore, will not apply to a later matter in related litigation if the later claim, although premised on similar facts, is based on different evidence or admissions. See, e.g., *Meridian Reserve*, 87 F.3d at 410 (doctrine does not apply where previous ruling was made in different context, involving different considerations); *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 706 (10th Cir. 1993) (doctrine does not apply if earlier matter is "factually distinct"), modified on other grounds on rehearing en banc, 39 F.3d 1078 (10th Cir. 1994), *cert*. denied, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). This is particularly true in bankruptcy, where a "case" may involve a series of distinct adversary proceedings or contested matters, each involving a similar set of facts, but different claims based on different evidence.

5. On or about March 17, 2006, Thomas and Teta formed Spotlight and filed Articles of Organization with the Colorado Secretary of State. Motion ¶ 1, Response ¶ 1.[18]

6. Thereafter, Thomas and Teta engaged in the business of selling used automobiles to the retail public. Motion ¶ 2, Response ¶ 2.

7. Spotlight's principal business office was 985 S. Logan St., Denver, CO 80209. Motion ¶ 3, Response ¶ 3.

8. At all times relevant, Thomas was the registered agent for Spotlight. Motion ¶ 4, Response ¶ 4.

9. At all times relevant, Thomas and Teta were the only members of Spotlight. Motion ¶ 5, Response ¶ 5.

10. Thomas and Teta shared equally in all management responsibilities of Spotlight. Motion ¶ 6, Response ¶ 6.

11. Spotlight Motors LLC, at the time of the sale, was a licensed Colorado automobile dealer holding Colorado motor vehicle sales license number 39176. Complaint ¶¶ 10, 65, Answer ¶¶ 10, 65.

12. The first transaction at issue in this case involved a consignment agreement wherein on or about July 21, 2009, Spotlight entered into a consignment agreement with Plaintiff Lori J. Waknin ("Waknin") to sell her 2002 Mercedes Benz automobile ("Automobile"), VIN WDBLK70G52T129168. Complaint ¶¶ 13, 66, Answer ¶¶ 13, 66. Motion ¶ 7, Response ¶ 7.

13. The consignment agreement was a hand written document signed by Teta stating the terms and conditions for selling Waknin's Automobile. Motion ¶ 8, Response ¶ 8.

14. Thereafter, on or about August 28, 2009, Lykins observed the Automobile on Spotlight's car lot and Lykins proceeded to enter into negotiations with Thomas for the purchase of the Automobile. Motion ¶ 9, Response ¶ 9.

15. The second transaction occurred on or about August 28, 2009, wherein Lykins purchased Waknin's automobile from Spotlight tendering a cashier check to Spotlight for the stated contract purchase price of Twenty-One Thousand Three Hundred Eighty-Two dollars and

---

[18] Motion and Response paragraph numbers refer to the numbered paragraphs in the "Facts" section of the Plaintiffs' *Amended Memorandum in Support of Plaintiffs' Joint Motion for Summary Judgment Pursuant to FED. R. BANKR. P. 7056(1)* at pp. 2-7 and the "Facts" section of the *Defendant's Memorandum in Opposition of Plaintiffs' Memorandum in Support of Motion for Summary Judgment* at pp. 3-5.

       Forty –Two cents ($21,382.42).  Complaint ¶¶ 14, 67, 68, Answer ¶¶ 14, 67, 68.  Motion ¶¶ 11, 12, Response ¶¶ 11, 12.

16. Thomas, acting on behalf of Spotlight, executed a buyer's order and invoice with Lykins for the Automobile.  Motion ¶ 10, Response ¶ 10.

17. On or about August 28, 2009, Thomas and Teta knew that Public Service Credit Union ("PSCU") held a lien upon the automobile in the amount of $15,960.20.  Complaint ¶ 19, Answer ¶ 19.

18. On or about September 21, 2009, some twenty-four (24) days after receiving certified funds in the amount of $21,385.42 from Lykins, Spotlight issued a check payable to Public Service Credit Union in the amount of $15,596.56 to pay off Waknin's lien/loan on the Automobile.  Motion ¶ 13, Response ¶ 13.  The check was subsequently dishonored.  Motion ¶ 14, Response ¶ 14.

19. On or about November 4, 2009, Waknin filed suit in Denver District Court, Case 09 CV 10346, as against Spotlight Motors LLC, alleging inter alia, breach of contract, breach of fiduciary duty, conversion, and violation of the Colorado consumer protection act.  Complaint ¶ 31, Answer ¶ 31.  Motion ¶ 18, Response ¶ 18.

20. Unaware of Waknin's pending state court case, on or about November 9, 2009, Lykins, through counsel and pursuant to COLO. REV. STAT. § 42-6-112, demanded delivery of title from Spotlight.  Motion ¶ 19, Response ¶ 19.

21. On January 8, 2010, Lykins filed a complaint against Spotlight with the Colorado Department of Revenue.  Motion ¶ 20, Response ¶ 20.

22. On or about March 5, 2010, Plaintiff Lykins moved the state court for permission to intervene in Case 09 CV 10346.  Complaint ¶ 32, Answer ¶ 32.

23. Thereafter, on or about March 26, 2010, the state court granted Lykins' Motion to Intervene in Case 09 CV 10346 as Intervener/Plaintiff pursuant to C.R.C.P. Rule 24, seeking permission to amend the compliant, adding inter alia, claims in the nature of fraudulent transfer - COLO. REV. STAT. § 38-8-101 et. seq., Alter Ego Doctrine, Member Liability - COLO. REV. STAT. § 7-80-606, Common law Trustee Doctrine, violation of the Colorado consumer protection act, conversion/civil theft, breach of contract, civil conspiracy as to civil theft, fraud, and implead Chris Teta individually, and John C. Thomas individually as Defendants.  Motion ¶ 21, Response ¶ 21.  Complaint ¶ 33, Answer ¶ 33.

24. On or about April 19, 2010, the state court granted Waknin's Motion to Amend her complaint and implead Messrs. Chris Teta and John C. Thomas individually, and inter

      alia plead additional claims in the nature of civil conspiracy as to civil theft, fraud, and fraud by check fraud by check, unjust enrichment. Motion ¶ 22, Response ¶ 22.

25. On or about June 30, 2010, Defendant Teta filed for bankruptcy protection in Case No. 10-26493-MER. Motion ¶ 23, Response ¶ 23.

26. The state court case was automatically stayed as to Defendant Teta on June 30, 2010. Complaint ¶ 34, Answer ¶ 34.

27. On or about August 6, 2010, an *Order for Entry of Default Judgment Against Defendant Spotlight Motors LLC* entered in the state court case, 09CV10346. Default Judgment was entered in favor of Waknin and against Spotlight in the amount of $74,827.78. Motion ¶ 24, Response ¶ 24.

28. Plaintiffs filed a Joint Adversary Complaint as against Christopher Blair Teta; Adv. Pro. No. 10-01706-MER. Motion ¶ 25, Response ¶ 25.

29. On or about November 8, 2010, Defendant Thomas filed for bankruptcy protection in Case No. 10-38306-SBB. Motion ¶ 26, Response ¶ 26.

30. The state court case was automatically stayed as to Defendant Thomas on November 8, 2010. Complaint ¶ 35, Answer ¶ 35.

31. Plaintiffs filed a Joint Adversary Complaints as against John C. Thomas; Adv. Pro. No. 11-01056-SBB (reassigned to MER). Motion ¶ 27, Response ¶ 27.

32. On or about February 24, 2011, John C. Thomas filed an answer denying all Plaintiff's allegations. Motion ¶ 28, Response ¶ 28.

33. On or about March 17, 2011, in Courtroom D, United States Bankruptcy Court, a hearing was conducted on Plaintiffs' claims under 11 U.S.C. §§ 523(a)(4) and (a)(6); Adv. Pro. No. 10-01706-MER. Motion ¶ 29, Response ¶ 29.

34. Upon Plaintiffs' joint motion for entry of judgment pursuant to FED R. BANKR. P. 7055, Docket # 9, Adv. Pro. No. 10-01706-MER, the Court entered an Order on June 16, 2011, as against Teta in favor of Waknin and Lykins. Motion ¶ 30, Response ¶ 30.

35. On Notice of Entry On Docket, Adv. Pro. No. 10-01706-MER, dated July 6, 2011, Judgment entered as against Teta and in favor of Waknin in the amount of $19,436.86 in damages, trebled to $58,310.58 plus attorney fees and costs of $19,070.58, for a total of $78,070.58, plus post judgment interests pursuant to 28 U.S.C. § 1961; and as against Mr. Teta in favor of Plaintiff Lykins in the amount of $22,431.56 in damages, trebled to $67,294, plus attorney fees and costs of $14,943.14, for a total of $82,237.82, plus post judgment interests pursuant to 28 U.S.C. § 1961. A constructive trust was established in

favor of Public Service Credit Union for the purpose of satisfying the lien held on the Automobile. Such debt was deemed non-dischargeable in Teta's bankruptcy case pursuant to §§ 523 (a)(2)(A), (a)(4) and (a)(6). Motion ¶ 31, Response ¶ 31.

For the reasons set forth above,

IT IS ORDERED the *Plaintiff's Amended Joint Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056(1)* is DENIED in part and summary judgment shall not enter under FED. R. CIV. P. 7056(a).

IT IS ORDERED the *Plaintiff's Amended Joint Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056(1)* is GRANTED in part and the above-listed undisputed facts are hereby established in this case pursuant to FED. R. CIV. P. 7056(g).

Dated March 26, 2012

BY THE COURT:

_____
Michael E. Romero
U.S. Bankruptcy Judge